IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| RONALD ZEBROWSKI, | |
| Petitioner, | CIVIL ACTION NO.: 2:20-cv-50 |
| v. | |
| WARDEN LINDA GETER, | |
| Respondent. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Ronald Zebrowski ("Zebrowski"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas. Doc. 1. Respondent filed a Motion to Dismiss, Zebrowski filed a Response, as amended, and Respondent filed a Reply. Docs. 3, 11, 12, 14. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Zebrowski's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Zebrowski *in forma pauperis* status on appeal.

## BACKGROUND

Hanover County, Virginia authorities arrested Zebrowski on April 17, 1996, on state charges of transporting cocaine and possession of cocaine with intent to distribute. Doc. 3-1 at 3, 16. Zebrowski escaped from state custody on June 6, 1996, id. at 3, and was arrested in Jamaica on August 24, 1996, by Drug Enforcement Agency ("DEA") authorities for conspiracy to distribute powder and crack cocaine and marijuana, a continuing criminal enterprise, and possession with intent to distribute crack cocaine. Id. at 3; Doc. 3-3. Zebrowski was sentenced

in a Virginia state court on January 14, 1997, to 40 years' imprisonment, 20 years suspended, to be served concurrently with any impending federal sentence. Doc. 3-1 at 3, 16. The District Court for the Eastern District of Virginia sentenced Zebrowski to life imprisonment on March 4, 1997, and his sentence was later reduced to 360 months' imprisonment, after he pleaded guilty to the continuing criminal enterprise count. Id. at 2, 7; Doc. 1 at 3. On April 24, 1997, Zebrowski was taken into temporary custody by Virginia state authorities, was sentenced in Virginia to a five-year suspended sentence for attempted homicide, escape, and use of a firearm during the commission of a felony, and was returned to federal custody on April 25, 1997. Doc. 1-1 at 3, 17. Zebrowski has a projected release date of September 9, 2022, via good conduct time release. Id. at 2, 6, 7.

## DISCUSSION

In his Petition, Zebrowski seeks an additional 12 days' good conduct time against his federal sentence for each year from 1998 through 2008. Zebrowski alternatively seeks an additional 12 days' credit for the year 2008. Zebrowski also seeks pretrial credit from January 14, 1997 through March 1, 1997.

Respondent states the Bureau of Prisons ("BOP") calculated Zebrowski's sentence using the date of offense listed on the judgment and commitment, May 7, 1996, and, thus, Zebrowski's sentence was calculated in accord with the Prison Litigation Reform Act ("PLRA"), which became effective April 26, 1996. Respondent also states Zebrowski's federal sentence computation was updated to provide him with additional pre-trial credits for state custody from April 17, 1996 through May 7, 1996. Respondent maintains Zebrowski has been given all credit against his federal sentence to which he is entitled.

2

**I.      Whether Zebrowski's Claim for Pre-Trial Credit Against his Sentence is Moot**

Zebrowski asserts he noticed his sentence computation sheet reflected improper jail credits from May 7, 1996 through June 6, 1996, and August 24, 1996 through March 3, 1997. Doc. 1-1 at 5.  Zebrowski filed an administrative remedy on this matter and was awarded 20 days' credit, yet his sentence computation sheet was updated to reflect credit from April 17, 1996 through June 6, 1996, and August 24, 1996 through January 13, 1997.  Id.  Zebrowski seeks to have the reduction of 223 days' credit to 194 days' credit remedied, as the error "directly effects [sic] petitioner's liberty interest, as it improperly increases the amount of time petitioner is required to serve." Id. at 6, 20, 29.

Respondent notes Zebrowski's federal sentence computation was updated to award him additional pre-trial credits for time in state custody from April 17, 1996 through May 7, 1996. Doc. 3 at 3.  Thus, Zebrowski's credit from January 14, 1997 through March 3, 1997, was removed.  Id.  However, once it was determined Zebrowski was not serving a state sentence during this time and had remained in primary federal custody, this credit was restored, meaning Zebrowski received the relief he requested, rendering this portion of Zebrowski's Petition moot. Id. & at 13.

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'"  Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014).  This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations." Id.  There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement."  Harrell v. The Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted).  Regarding the mootness strand, the United States Supreme Court has made clear that "a federal court has no

authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted). Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed. Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'" Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). "Events which occur subsequent to the filing of a petition may render the matter moot." Johnson v. Glover, No. 1:04-CV-413, 2006 WL 1008986, at *1 (M.D. Ala. Apr. 18, 2006) (citing Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 350 (D.C. Cir. 1997)).

Here, Zebrowski was arrested on state charges by Virginia authorities on April 17, 1996, and was sentenced to 40 years' imprisonment (with 20 years suspended) on January 14, 1997, to be served concurrently with any impending federal sentence. Doc. 3-1 at 17. Zebrowski was in state custody from April 17, 1996 until June 6, 1996, when he escaped. Id. at 3. Zebrowski was arrested again in Jamaica on August 24, 1996, by DEA agents. He was released directly to the DEA in Virginia on October 29, 1996. Id. at 19. On March 4, 1997, Zebrowski was sentenced in federal court to serve life in prison, and this sentence was later reduced to 360 months. Id. at 2. The BOP computed Zebrowski's sentence as commencing on March 4, 1997, the date his sentence was imposed. Id. at 7. He received credit against his federal sentence from April 17,

4

1996 through June 6, 1996, and August 24, 1996 through March 3, 1997.  Doc. 3-1 at 8.  In other words, Zebrowski received credit for all the time between his first arrest in Virginia through his sentencing, minus the time he was out of custody due to his escape.

Zebrowski now seeks pretrial credit against his federal sentence from January 14, 1997 through March 3, 1997, doc. 1-1 at 5–6, but he has already received this credit.  Deborah Colston, a management analyst with the BOP's Designation and Sentence Computation Center, declares Zebrowski's jail credit was updated on June 3, 2020 (after he filed the instant Petition), to reflect he was in federal custody from August 24, 1996 through March 3, 1997.  Doc. 3-1 at 3.  Indeed, this update is reflected in Zebrowski's good conduct release date of September 9, 2022.  Compare Doc. 3-1 at 6 with Doc. 1-1 at 20 (showing Mar. 28, 2023 as good conduct release date, as of June 11, 2018); 29 (showing Apr. 26, 2023 as good conduct release date, as of Sept. 18, 2019); and 18 (showing Oct. 28, 2022 as good release date, as of Jan. 13, 2020).  As Zebrowski has been provided his requested relief since the filing of his Petition, his request for relief is now moot.  Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this portion of Zebrowski's Petition.

## II.     Whether This Court has Jurisdiction to Review the Calculation of Zebrowski's Good Conduct Time

Zebrowski contends the BOP erred in its calculation of his good conduct time credits based on his satisfactory progress toward his General Educational Development ("GED") credential.  As a threshold matter, Respondent asserts the BOP's determination of whether Zebrowski was making satisfactory progress toward his GED is not subject to judicial review.  Doc. 3 at 10.  Respondent notes the BOP made an individualized determination Zebrowski had not made satisfactory progress toward his GED, which was a decision the BOP was statutorily

5

authorized to make.  Id. at 11.  While Zebrowski filed a Response to the Motion to Dismiss, he does not address this argument.  Doc. 11.

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action.  See 5 U.S.C. § 703.  However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626.  The Eleventh Circuit Court of Appeals has further indicated this lack of jurisdiction applies even in a § 2241 habeas action, unless the petitioner is challenging the underlying rules and regulations which establish the criteria governing the BOP's decision-making process.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."); Rodriguez v. Johns, No. 5:17-CV-134, 2018 WL 4102854, at *2 (S.D. Ga. July 26, 2018), *report and recommendation adopted*, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).  Thus, where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution.  See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011).

The BOP's determination regarding Zebrowski's good conduct time falls under the purview of § 3625.  Despite Zebrowski's contention he is entitled to receive the full 54 days' good conduct time, doc. 1 at 2; doc. 1-1 at 3, the BOP's determination on this matter is an adjudicative, discretionary determination and not a rulemaking one.  "And that decision is not subject to judicial review."  Cook, 208 F.3d at 1319.  Even construing his claims liberally, Zebrowski does not argue the BOP acted outside of its statutory authority or violated the Constitution.  Consequently, § 3625 entirely precludes this Court's review of the BOP's challenged determination of Zebrowski's good conduct time calculation.

Thus, the Court should **GRANT** Respondent's Motion to Dismiss and **DENY** Zebrowski's Petition on this basis.  As discussed in the following Section, however, even if this Court had jurisdiction to review Zebrowski's claims relating to his good conduct time calculation, he fails to show the BOP improperly calculated this credit.

### III. Whether Zebrowski is Entitled to Additional Good Conduct Time

To answer the grounds Zebrowski raises in his Petition, the Court must begin with a determination of the date of offense.  From there, the Court must determine whether Zebrowski is entitled to any more credit against his federal sentence.

#### A. Date of Offense

Zebrowski was charged in count 2 of the indictment, filed on May 7, 1996, of a continuing criminal enterprise.  Indictment, United States v. Ronald Zebrowski, 3:96CR41 (E.D. Va. May 7, 1996), ECF No. 1.  Zebrowski was charged in count 2 of the superseding indictment with a continuing criminal enterprise occurring between 1998 and May 7, 1996.  Id., ECF No.

110; Doc. 3-3 at 47.[1]  In addition, the date of offense is listed on the Judgment & Commitment as May 7, 1996.  Doc. 3-1 at 10.  Thus, Zebrowski's date of offense is May 7, 1996, which is after the PLRA became effective on April 26, 1996.

### B.        Application of 18 U.S.C. § 3624 and 28 C.F.R. § 523.20

Zebrowski avers he did not qualify for the good conduct time "restrictions inflicted upon him pursuant to VCCLEA [the Violent Crime Control and Law Enforcement Act] and PLRA."  Doc. 1-1 at 3.  Thus, Zebrowski asserts this Court should order the BOP to give him 54 days' good conduct time for the 11 years he was only awarded 42 days' good conduct time.[2]  Id.

Under 18 U.S.C. § 3624(b)(1), inmates in the custody of the BOP who are serving a term of imprisonment of more than one year may receive up to 54 days of good conduct time credit annually toward their sentence.  An inmate serving a sentence for an offense committed on or after April 26, 1996, may earn the full 54 days if the inmate "has earned or is making satisfactory progress toward earning a GED credential or high school diploma[.]"  28 C.F.R. § 523.20(c)(1); see also 18 U.S.C. § 3624(b)(1).  If an inmate "has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma," then the maximum amount of good conduct time an inmate can earn is 42 days.  28 C.F.R. § 523.20(c)(2).

Relatedly, under 18 U.S.C. § 3624(f)(1), "mentally capable inmates who are not functionally literate" are required to participate in a "mandatory functional literacy program."  Inmates without a high school diploma or GED fall under this group and must complete a

---

[1]     The Court was unable to access the original indictment via the Eastern District of Virginia's CM/ECF system, but the docket entries for the original indictment and the superseding indictment indicate the charge to which Zebrowski pleaded guilty did not materially change.

[2]     Zebrowski contends his offense was committed before April 26, 1996, and thus, the VCCLEA, as opposed to the PLRA, applies to his case.  Doc. 1-1 at 3.  However, as discussed in § III(A), such a contention is without merit.  Based on the offense date, the PLRA governs here.

"minimum of 240 instructional hours or until a GED is achieved, whichever occurs first." 28 C.F.R. § 544.70.  Participating in this literacy program also satisfies the "making satisfactory progress toward a GED credential or high school diploma" requirement under 28 C.F.R. § 523.20 for inmates to be eligible for 54 days' good conduct time.

If an inmate subject to the PLRA "receives a progress assignment indicating" the inmate "is not making satisfactory progress," this assignment will be changed to show satisfactory progress "only after the inmate is currently and continuously enrolled in the literacy program for a minimum of 240 of instructional hours."  28 C.F.R. § 544.73(b)(2).  An inmate's withdrawal from a literacy program will result in an assignment indicating a lack of satisfactory progress. Id.  Failing to enroll or complete 240 hours in the literacy program results in eligibility for only 42 days' good conduct time.  28 C.F.R. § 523.20(c)(2).

During the first year of Zebrowski's incarceration for his federal sentence, he was enrolled in GED classes and was considered to be making satisfactory progress toward his GED credential at that time; thus, he received 54 days' good conduct time for that year.  Doc. 3-2 at 12, 15.  However, Zebrowski withdrew from GED classes on February 11, 1998, and only received 42 days' good conduct time from 1998 through 2008, as Zebrowski re-enrolled in classes on April 21, 2008.  Id. at 11, 15.  However, when Zebrowski's annual review was conducted on August 21, 2008, he had not yet completed the 240 hours necessary to have been awarded 54 days' good conduct time for the year 2008.  Id. at 4.  Zebrowski completed his 240 hours on October 15, 2008, and received his GED in December 2008.  Id. at 3.  Zebrowski has received 54 days' good conduct time for every year since that time.  Id. at 15.

The Court notes Zebrowski's assertion his date of offense occurred prior to the PLRA's effective date of April 26, 1996, and thus, the Court should order he be given 54 days' good

conduct time for every year he has been incarcerated versus the 42 days' good conduct time he was given. Doc. 1-1 at 3. As noted above, the date of offense for Zebrowski is May 7, 1996, and the PLRA controls. Nevertheless, even if the Court were to consider the date of offense to be April 17, 1996, as Zebrowski maintains, he would still need to make satisfactory progress toward his GED to be awarded *any* good conduct time. 28 C.F.R. § 523.20(b) (not allowing for any good conduct time unless inmate making satisfactory progress toward GED for offenses committed between September 13, 1994 and April 26, 1996); see also 28 U.S.C. § 3624(b)(1).

Additionally, Zebrowski contends he mistakenly received "unsatisfactory progress" toward his GED in 2008 because he was originally in the Spanish-language GED classes when he re-enrolled in April 2008. Doc. 1-1 at 4. Even if Zebrowski's enrollment in Spanish-language GED classes in April 2008 led to his receipt of "unsatisfactory progress" toward his GED, such enrollment had no effect on Zebrowski. In order to have satisfactory progress toward a GED credential after a prior withdrawal from a program, an inmate must complete a minimum of 240 hours of instruction. 28 C.F.R. § 544.70. Accordingly, Zebrowski re-enrolled in GED classes on April 21, 2008, and was placed in English language GED classes on September 5, 2008. Doc. 3-2 at 3. When Zebrowski had his annual review on August 21, 2008, he could not have completed his 240-hour minimum requirement by this time, as it typically takes inmates six months to complete this requirement. Id. at 3–4. Respondent correctly observes it took Zebrowski six months to complete this requirement, as he completed his 240-hour requirement in October 2008 and received his GED on December 2008. Doc. 3 at 9–10 (citing Doc. 3-2 at 3–4).

Thus, it is clear Zebrowski has received all of the good conduct time to which he is entitled. Consequently, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** Zebrowski's Petition on this basis.

### IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Zebrowski leave to appeal *in forma pauperis*. Though Zebrowski has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Zebrowski's Petition and the responsive pleadings, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Zebrowski's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, **DIRECT**

11

the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Zebrowski leave to proceed *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of February, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA